OPINION. Black, Judge: The Commissioner, in his deficiency notice, has determined deficiencies in petitioner’s excess profits tax for its taxable years ended May 31, 1944, and May 31, 1945, of $24,754.22 and $33,-793.68, respectively. These deficiencies are due entirely to the dis-allowance of deferments in payment of excess profits tax heretofore allowed by the Commissioner in accordance with the provisions of section 710 (a) (5). The Commissioner also states in his deficiency notice, as follows: In making this determination of your excess profits tax liability careful consideration has been given to your previously mentioned applications for relief under Section 722 of the Internal Revenue Code (Form 991), and related claims (Form 843), and it has been determined that no amount of constructive average base period net income is allowable for any of the taxable years mentioned. Petitioner makes no assignment of error as to the correctness of the deficiencies determined by respondent but it does contest the correctness of respondent’s disallowance of its applications for relief under section 722. Petitioner contends that it is entitled to relief under section 722 (b) (1), (2), and (4) and that— Respondent erred in disallowing petitioner’s claims for relief and in refusing to determine that petitioner’s constructive average base period net income should be at least the sum of $171,211.00, and in refusing to determine that petitioner is entitled to an excess profits credit based upon that amount for each of the taxable years ended May 31, 1941, 1942, 1943, 1944, 1945 and 1946. Because of its contention that it is entitled to relief under section 722, petitioner alleges that it is entitled to refunds, as follows: Taxable year ended May SI Amount of refund 1941_ _ $17,149. 63 1942_ _ 72, 451. 30 1943_ _ 132,190.98 1944_ _ 75, 012. 78 1945_ _ 113,783.46 1946_ _ 48, 961.91 As has already been stated, respondent, in his deficiency notice, has determined that petitioner is not entitled to any relief for any of the taxable years and has denied its applications for relief. [Respondent still maintains that position. Our Findings of Fact show that in its fiscal year ended May 31, 1937, petitioner had excess profits tax net income of $93,906.66. In its fiscal years 1938 and 1939, petitioner had losses of $130,909.98 and $101,246.06, respectively. Petitioner contends that if it had not been for the California freeze of January 1937, it not only would have had no losses in its 2 fiscal years 1938 and 1939, but that it would have had very substantial profits in each of those 2 fiscal years. It has been stipulated, as follows: The 1937 freeze in California, in January of that year, was abnormal in severity, and was the worst freeze in both temperature and duration in the history of all California citrus districts. Because of the effects of this freeze on its earnings in its fiscal years 1938 and 1939, petitioner contends for relief under section 722 (b) (1) and/or (2), 1939 Code, printed in the margin.[1] Petitioner, in its petition, also claims relief under section 722 (b) (4). However, petitioner does not argue the applicability of that subsection in its brief and under the facts we do not see where it is applicable. Therefore, we shall confine our discussion to petitioner’s claims for relief under section 722 (b) (1) and/or (2). Petitioner, in its brief, contends for a constructive average base period net income of $172,669, and that this amount should be used in computing its excess profits tax credit instead of the invested capital credit which the Commissioner has used in his denial of petitioner’s applications for relief under section 722 and his determination of the deficiencies for petitioner’s fiscal years 1944 and 1945. Respondent, on his part, contends that petitioner’s heavy losses in its fiscal years 1938 and 1939 were not due to the freeze which occurred in California in January 1937, but would have been sustained on account of depressed business conditions in 1938, regardless of the freeze. We think respondent’s position cannot be sustained on the face of the evidence, both oral and documentary, which is in the record. We have endeavored in our Findings of Fact to give a correct reflection of what this evidence shows and no point would be served in repeating those facts in this Opinion. We think it is sufficient to .point out that in the first year of the base period, the fiscal year 1937, petitioner had excess profits net income of $93,906.66. There is no reason to believe, we think, but that in the following 2 fiscal years, 1938 and 1939, petitioner would have had very substantial net income in each of the years, except for the severe freeze in 1937. Instead of substantial amounts of net income which we think petitioner would have had in each of those years, it had severe losses, the amounts of which we have already stated. The facts as to how the effects of this January 1937 freeze on petitioner’s business extended down as far as petitioner’s 1939 fiscal year and, even to some extent in the fiscal year 1940, are detailed in our Findings of Fact and need not be repeated here. That such a freeze as the abnormal California freeze in January 1937 was such an unusual and peculiar event affecting petitioner’s business as qualifies petitioner for relief under section 722 (b) (1) and/or (2), seems to us clear. Cf. S. N. Wolbach Sons, Inc., 22 T. C. 152; Morrow-Thomas Hardware Co., 22 T. C. 781; and Schwarz Paper Co., 23 T. C. 605. But, as we said in the Schwarz Paper Co. case: However, it is not sufficient for petitioner merely to prove grounds for relief. It must go further and show facts which will he sufficient to establish a constructive average base period net income which, when used in a computation of its excess profits tax credit, will result in a lesser tax than by computing the credit by the use of the invested capital method. * * * It is respondent’s contention that even assuming that petitioner has established its right to relief under section 722 (b) (1) and/or (2), nevertheless any constructive average base period net income arrived at under a reasonable reconstruction would be less than petitioner’s excess profits credit computed on the invested capital method and, therefore, would afford no relief. Petitioner, on the other hand, contends that by the elimination of the effects of the abnormal freeze of January 1937 on petitioner’s business during the base period, a constructive average base period net income of $172,669 is arrived at and that we should make a finding that, A fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period is $172,669. The manner by which petitioner arrives at this constructive average base period net income of $172,669 is detailed in Exhibit 51, introduced in evidence by petitioner and which was compiled by its president and general manager, W. K. McCracken, and concerning which he testified at length at the hearing. This proposed reconstruction which has been submitted by petitioner has been carefully studied and considered but we find ourselves unable to agree to it. It seems to us that the reconstruction submitted by petitioner attributes all of its troubles during its fiscal years 1938 and 1939 to the abnormal freeze of January 1937. While, as we have already said, we think the record well establishes that the January 1937 freeze greatly affected petitioner’s business in its fiscal years 1938 and 1939 in an adverse manner, we do not think the freeze was the only factor which adversely affected petitioner’s business in those 2 taxable years. We think there is merit in respondent’s contention that the recession in general business which both sides agree occurred in the calendar year 1938 and which, therefore, existed in part of petitioner’s fiscal years 1938 and 1939, also adversely affected petitioner’s business in those 2 taxable years. We think also that, as respondent argues in his brief, the growing competition with Florida orange juice which began to be an important factor during these 2 fiscal years was also an adverse factor which affected petitioner’s business. Cf. Lamar dreamery Co., 8 T. C. 928. In the Lamar Creamery Co. case, we said: But can such competition be considered as a temporary economic circumstance unusual in the ease of petitioner or of the industry of which petitioner was a member? We do not think it can be so considered. Competition is present in almost any business. Instead of it being something unusual, it is quite common. It is of the very essence of our capitalistic system. * * * While it is true that in the instant case petitioner does not contend that the growing competition of petitioner’s product with Florida orange juice should be considered as a qualifying factor under section 722 (b) (2), nevertheless in its reconstruction it gives no effect whatever to this growing competition with Florida orange juice. In fact, it contends strongly that this Florida orange juice competition had no effect on its business in the fiscal years 1938 and 1939, and attributes, as we have already said, all of the adversities which petitioner encountered in the 2 above-named fiscal years to the result of the abnormal freeze which took place in January 1937. We find ourselves unable to agree to this position. We think, in making any reasonable reconstruction, that not only the factor of the abnormal freeze should be given effect, but also the factors of the business recession in the calendar year 1938 and the increasing Florida orange juice competition in both fiscal years. When this is done, we are unable to approve the reconstruction submitted by petitioner by which a constructive average base period net income of $172,669 is arrived at. We have carefully studied the record and the briefs of both parties and have come to the conclusion that a constructive average base period net income of $84,000 is reasonable and should be used in arriving at petitioner’s relief under section 722. We realize, of course, that in making surmises which are necessary in arriving at a reasonable reconstruction giving effect to the factors which a taxpayer has proved as a basis for relief under section 722, it is generally impossible to be exact. The best that can be done is to make a reasonable approximation. This we have done in arriving at a constructive average base period net income of $84,000. This should be used in a recomputation under Rule 50, instead of the credit based on invested capital which the Commissioner has used in his deficiency notice. Reviewed by the Special Division. Decision will be entered imder Bule 50. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. (b) Taxpavers Using Average Earnings Method. — The tax computed' under this subchapter (-without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is au inadequate standard of normal earnings because— (1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer, (2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of tern-porary economic events unusual in the ease of such industry,